The case this morning is 19-1656, Joseph Gomes v. Steven Silva. Counsel. Good morning, Your Honor. Charles Hope for Petitioner Appellate Joseph Gomes. I'd like to reserve two minutes for rebuttal. Yes, you may have it. Thank you. The primary issue in this case, Your Honors, is the sufficiency of the evidence as to Mr. Gomes' knowledge and intent that a shooting was done. No, it isn't. The primary issue is whether the SJC was unreasonable in rejecting your sufficiency of the evidence. Right? Understood, Your Honor. Yes. The reasonableness of the SJC's decision is the standard on which you are evaluating the SJC's decision. I'd suggest, Your Honor, that the SJC's decision is unreasonable if you cannot point to anything in the evidence which distinguishes the facts on the ground with an assumption that Mr. Gomes had a knowledge and intent of the shooting, and the facts on the ground if Mr. Gomes did not have a knowledge and intent that there would be a shooting. And I'd suggest there's nothing in the evidence anywhere that lets you distinguish between those two situations. But you have evidence of motive. You've got evidence... He wasn't just some guy who happened to park right there. You've got evidence that he had a motivation to go to the scene and confront Mr. Evans. Well, it would inflict some harm on them. In other words, he seemed pretty angry, and he had reason to be angry. His anger was at the police, according to the testimony, Your Honor, not at Mr. Evans. Well, that's what one of the friends put. And that's the testimony, Your Honor. In other words, your proposition would be he just drove there to have a chat with the fellow? No, Your Honor, I'm perfectly happy to concede. He drove there for a confrontation. Okay. Your Honor can conclude that confrontation. And then the confrontation took the form of... The question is, but the element of the offense that has to be proved is not that he went to confront Mr. Evans. It's that he went to intentionally and knowingly kill someone. What you're arguing is the government needed to show shared intent by the fact that he was driving the car. Yes. That's sufficient. Now, why isn't it sufficient to show shared intent when he stopped the car and he started again after the shooting was over? Well, Your Honor, I'd suggest again that that is... The question is, does that distinguish it from a situation in which he's going to confront Mr. Evans but does not intend the shooting? If he drives to the scene, not intending a shooting, planning to look for Mr. Evans and see if he's there to yell at him or whatever, and suddenly his passengers start shooting, it is a completely logical next step for him to drive away from the scene. The question is, does the fact he drove away from the scene tell you anything about whether he knew or didn't know that a shooting was going to happen? Is there any evidence that the other two people in the car had a motive to shoot? One of them was the cousin, Emanuel, the co-defendant, was the cousin and has all the same family motivations that Mr. Gomes would have. So no one has a motivation any different than his or any greater than his? Not on the evidence, but if it's equal, Your Honor, then it's unreasonable to find that was proof beyond a reasonable doubt. How does this case differ from Stewart v. Colter? That's the case where I call the cat murder case of some years ago, where again, it's inferences. Are you saying that there are too many inferences here to get to the conclusion that he had shared intent? Is that what you're arguing? I think that's part of my argument, Your Honor. I don't understand. I'm not familiar with Stewart. It's a Priya Deepa case. It's a Priya Deepa case. All right. So the question changed from a pure Jackson issue to a unreasonableness of the state high court decision. But as to the stacked inferences, we do certainly argue that there are stacked inferences here that are unreasonable, unreasonably piled up. But again, we point to... Again, could you turn back to the SJC's decision and tell us exactly what part of the analysis to support their conclusion that a jury could so find was unreasonable? Certainly, Your Honor. The SJC relies on five points. Those points are that there was a shooting at his parents' house that morning, that he was angry about it, that he drove to the scene, that he stopped, that there was a shooting, and he drove away. That's all the SJC says. Well, they also relied on the fact that there were shells found in the car. That's part of the evidence that there was a shooting from the car, Your Honor. And we don't disagree that there was a shooting from the car, that the evidence clearly supports that. The question is, was there evidence that Mr. Gomes knew or intended that shooting to happen? So, at the time of the shooting, I think some of the witnesses said that there were several guns used, and that gets reinforced by the fact that there are two different types of shells found. Am I correct? You're correct, Your Honor. And there was evidence that shooting was both from the front seat passenger and the rear seat? Yes, Your Honor. Right behind the front seat passenger. Right behind. I hope that the driver of the car understands what's going to be happening. Well, Your Honor, the evidence is, as you say, there was shooting from the back seat and from the front seat. The evidence is that it would have been difficult in the extreme to move from one of those to the other, that there wasn't space in the gap. Right. And there was no one in the back seat when the car was stopped a few minutes later. But somebody could have been let out of the car shortly thereafter. Exactly, Your Honor. It's our position that to the extent there's some assumption you can make from having fled the scene with the people, the fact that he stopped as soon as possible and got the shooters out of the car is evident in favor of him being innocent. Like if the assumption is that fleeing with the shooters somehow shows that you are guilty, which this court has called into question in the past, then stopping the car and getting the shooters out as soon as you're away from the scene. And we suggest that they're finally stopped a few minutes later, only a block away. So there is strong evidence that they stopped and did something. Getting them out of the car at that point is evidence that they were not coordinating with those people. They got them out as soon as they could and they went a different direction from the shooters. I'm not sure I heard an answer to the question. As I understand the question, isn't the fact that there were two shooters, doesn't that make it less probable that your client was unaware of what the shooters were about to do? Give an example. Suppose there had been a bus with 15 people on it. And he drove the bus up and all 15 simultaneously entered. Open fire. I think we find it pretty preposterous that he didn't know what was going to happen, absent some other facts. You don't have 15, but you don't have one. You've got two. Doesn't that cut against you? I mean, I would point to the Brown case, Your Honor, that I cited in my reply brief, where there are, in fact, three shooters. And the court says that the evidence of joint venture is weak enough that they're not going to address it. They're going to move on to other issues to resolve the case. Okay. You have your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. Jennifer Zeldowski representing the respondent's team still on this matter. This case is about two evidentiary issues that were both properly addressed by the Supreme Judicial Court. As with any habeas case, the burden on the petitioner is very high. And in this particular case, you can't overcome it, specifically with this issue of the sufficiency of the evidence. Counsel, the question before us is not whether the SJC was correct. Agreed? Agreed, yes. It's only whether we can say it was an unreasonable application of Supreme Court law to the facts. Yes, Your Honor. Okay. But in this particular case, I would certainly argue that under the habeas review, which for us, sufficiency of the evidence claim has double layers with the Jackson standard, and then whether or not the SJC unreasonably applied that standard. In this case, we would argue that the SJC used a state equivalent to Jackson in analyzing its evidence, and that it did so in a reasonable manner. We talked a little bit about the evidence in this particular case, and I would point out that when you're looking at how the SJC analyzed it, when you look at the evidence from all the trial transcripts, it's more than he just drove there and a shooting took place. We certainly have the motivation from what happened earlier in the day, that the cousin was targeted, that the family was put out for a long period of time by the search warrant, and then later in the day, the petitioner and his co-defendant had, not his co-defendant, I believe it was a cousin or a nephew, had gone looking earlier for Mr. Evans. But exactly when the shooting takes place, and this is where the SJC talks about its use of state case law, that inferences are certainly allowed, circumstantial evidence is allowed, and that a joint venture of first-degree murder doesn't have to be only on direct evidence.  It talks about how, the court talks about how Mr. Gomes was motivated by the anger, that there was evidence that he was the driver of the car, and then it comes down to, he sped down the street, he intentionally and abruptly stopped right in front of the group of men that they thought contained Mr. Evans, because his car was right there and they knew that he lived there. He abruptly stopped, the windows rolled down, he didn't drive off, he stayed there while the shooting took place. He waited for the shooting to stop, then they drove off. And I think when you look at it from that perspective... What month of the year was this? Um... I'm just evaluating whether people would be driving around in a Boston winter or summer with windows already rolled down. Well, there was evidence that the windows were rolled down after they stopped. After they stopped, yes. The question is, before they stopped. It was February, wasn't it? I was going to say, I believe it was in the winter. I couldn't remember the exact month, because when the search warrant was executed, the family was waiting in the car so they knew it had been a colder month. But the evidence that came from the men who were standing on the street, right there, saw it happen, and that's the testimony that they gave. That they were standing by the car, the car stopped long enough for the windows to roll down, remained stopped during the entire shooting, then the windows went back up, and then they drove off. Those details are important when considering what's being argued here for... So we know from the bullets that one of the weapons was an automatic weapon, so the bullets can go out very quickly. What about the other bullets? Which other bullets? I'm sorry, go ahead. I thought there were two different types of bullets. There were, there was... One of them was from an automatic weapon, therefore the shooting was very fast. Yes, there were two, there was a .38 revolver and a .380 semi-automatic pistol that were used in the shooting. And there was ballistics found connected to both of those. So .38 revolvers are slower to shoot than a semi-automatic pistol? I am not that familiar with guns, Your Honor, that I can give you that. I think common sense would say it's slower, but both of those guns were found, ballistics were found to both of those being used at the shooting. With regards to the petitioner's argument that he was so surprised that he had sort of suddenly drove off, I wasn't able to find any evidence of that at trial. And so in this court, he has to see as well as looking to make any kind of inference in his favor, there still needs to be evidence of that inference. It can't just be we're going to look at it in retrospect and say this was the evidence, or maybe this is what the evidence would have inferred. In this particular case, there wasn't any evidence to support that theory. And the evidence that came from the victims of the shooting suggests the timeline that I've given you, in that the acts were very, very deliberate prior to and immediately following. Well, you're basically saying that there's proof of shared intent simply by the fact that he drove to the place, at least two of them were in the car, and the car stopped and the windows rolled down. And you say that's sufficient for shared intent to commit murder. Yes, Your Honor. Nothing else? Well, I think when you also look at the motive from what had happened earlier in the day. Wasn't that simply an inference? I know you can rely on inferences, but that seems relatively thin to come to intent, a shared intent. Well, there could be. I mean, there certainly are cases where there's more, but I think it's enough in this case when you look at all of the other evidence together. And I think when you look at the reaction afterwards, the reaction beforehand, and when you have that one little piece, when you start looking at the inferences together and the circumstantial evidence and the ballistic evidence all together, I think that's what gets you over the hurdle for the SJC's decision. And then for you to look at it through the Jackson standard, layered on top of that, that the SJC's decision on this issue is reasonable and should be affirmed. If there's no other questions, Your Honor, I'll rest on my brief. Judge Stahl just asked you essentially, aren't you going to rely on the evidence of speeding off and maybe letting one of the shooters out of the car? You didn't mention that evidence. The SJC mentions the evidence. I apologize, Your Honor. I know I did in my brief, talked about speeding off after. I apologize if I overlooked it. That is part of the SJC's evidence in this case that they considered as part of it, that once the shooting had stopped, the windows were rolled back up, and then the car sped off from the scene, perhaps to remove shooters from the scene. But I believe the co-defendant was also believed to be one of the shooters. He remained in the car when the car was stopped. So I apologize if I misspoke on that, Your Honor. I know I covered that in my brief as part of the evidence that was considered by the SJC. Okay. Thank you. Thank you, Your Honors. Thank you, Your Honor. To address the question of the time of an automatic and a revolver, a revolver is so much slower than an automatic, but it would still fire six shots in a matter of seconds. The only piece of evidence which I believe my sister identified, which I have not already addressed, is the rolling down of the windows. I'd suggest that that is still completely consistent with the situation in which he is going there to confront Mr. Evans. He drives up, he stops, the windows are rolled down, he yells at the people on the street, where is he driving? I'm just curious, do we know whether the driver controlled bringing the windows down? I do not, Your Honor. I have no idea. So nothing about this was presented in defense, and the information you just gave me about the .38 was also not presented in defense in the state court trial. I am not sufficiently familiar with the ballistics testimony to know about the guns, Your Honor. I don't believe there was anything in the testimony about who was in control of the windows. The people he was going to confront were people who he believed had just been firing guns at. No, Your Honor. They are people who he believed had just been fired at. There's nothing in the evidence about Mr. Evans having a gun or having shot at anyone at the initial incident. The evidence is that Mr. Evans followed a cousin of Mr. Gomes and then was shot at by a third party who is unrelated to Mr. Gomes. So at some point after the shooting, there had to be a stop long enough to get rid of the guns and the other shooter presumably to get out of the car? Yes, because no guns were ever found. No guns were found, so presumably the car did stop shortly after leaving. Yes, Your Honor. Okay. I would remind the court that there is a second issue in my brief, and I would rest on that. Thank you. Thank you. Thank you both. Thank you.